UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                           :

STEVEN ANDERSON,                                  :

                Plaintiff,                        :

                                                        :

       - against -                            :

                                                        :      1:18-cv-06152 (ER)

METRO-NORTH COMMUTER RAILROAD     :
COMPANY and INTERNATIONAL
BROTHERHOOD OF TEAMSTERS LOCAL 808,  :

                                  Defendants.         :

------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT METRO-NORTH COMMUTER RAILROAD COMPANY'S MOTION TO DISMISS

METRO-NORTH COMMUTER RAILROAD
RICHARD L. GANS, ESQ.
VICE PRESIDENT & GENERAL COUNSEL
By: Jennifer A. Mustes
420 Lexington Ave., 11th Floor
New York, New York 10170
(212) 340-2504
jmustes@mnr.org

*Attorneys for defendant Metro-North Commuter Railroad Company*

December 3, 2018

Plaintiff[1] acknowledges that in early June 2014 he received a letter from Metro-North terminating his employment for being absent without permission in excess of fourteen consecutive days. Compl. ¶ 17. Neither Plaintiff nor his then-union, Local 808, filed an appeal of his termination with Metro-North within the 15-day period to do so under the applicable collective bargaining agreement ("CBA"). *Id.* ¶¶ 18-19, 36. Indeed, Plaintiff had no contact with Metro-North whatsoever during the next several years, leading Metro-North to reasonably believe that there was no dispute concerning Plaintiff's termination. *See id.* ¶¶ 22-37. Metro-North first became aware of Plaintiff's contention that his termination violated the CBA when the instant lawsuit was filed in July 2018 – more than ***four years*** after Plaintiff's termination.

Plaintiff's suit is subject to a six-month statute of limitations, Opp. at 10,[2] and to allow him to pursue his claim against Metro-North years after his termination would negate the important purposes of limitations periods. Plaintiff's only explanation for raising such a belated claim is his allegation that he was misled about the existence of an appeal of his termination to Metro-North by Local 808. Opp. at 1. But Metro-North, which had no knowledge of Local 808's alleged misrepresentations before receiving Plaintiff's Complaint, should not be disadvantaged by the alleged actions of its CBA counterparty, over which Metro-North had no control. The Opposition does not cite any precedent allowing a claim for the breach of a collective bargaining agreement to proceed against an employer in circumstances presented here. Instead, it advances a theory under which Plaintiff could have delayed putting Metro-North on notice that he believed his termination violated the CBA for a decade or more – far longer than

---

[1] All undefined capitalized terms have the meanings given to them in the Memorandum of Law in Support of Defendant Metro-North Commuter Railroad Company's Motion to Dismiss, Dkt. 18 ("Mot.").

[2] "Opp." or "Opposition" refers to Plaintiff's Memorandum of Law in Opposition to Defendant Metro North Commuter Railroad Company's Motion to Dismiss, Dkt. 19.

New York's statute of limitations for breach of contract claims – and still have had a viable claim against Metro-North. *See* Compl. ¶ 30 (Plaintiff's allegation that Local 808 suggested arbitration of the purported appeal of his termination could take more than ten years to be resolved). Dismissing Plaintiff's claim against Metro-North is consistent with the principles of fairness and predictability underpinning limitations periods, and will still permit Plaintiff to pursue the relief he seeks from Local 808.

I.  **ALLEGED MISREPRESENTATIONS BY LOCAL 808 DO NOT SUBJECT METRO-NORTH TO INDEFINITE POTENTIAL LIABILITY**

Permitting Plaintiff to maintain a claim against Metro-North governed by a six-month statute of limitations that was filed more than four years after his termination would deprive Metro-North of the benefits conferred by statutes of limitations. *See, e.g.*, *Aslanidis v. United States Lines*, 7 F.3d 1067, 1074 (2d Cir. 1993) ("Statutes of limitations are designed to ensure fairness to defendants and to prevent surprises brought about by the attempt to breathe life into causes that have lain dormant for so long that proof, witnesses and memories all, have disappeared."); *Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999) ("Statutes of limitation serve several important policies" including "repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses.").

Tolling can extend the limitations period on a claim against a defendant that concealed a plaintiff's injury and thus delayed the initiation of the plaintiff's claim. But as Metro-North's opening brief explained, and the Opposition does not address, Plaintiff's pursuit of a claim against Metro-North – when Metro-North is not alleged to have engaged in any concealment – violates the principle that "'a plaintiff may not use fraudulent concealment by one defendant as a basis for tolling the statute of limitations against another defendant who did not engage in

affirmative fraudulent acts to conceal.'"  Mot. at 8 (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 232 (S.D.N.Y. 1989)).

> A. **The Opposition Ignores the Relevant Portions of Cases Refusing to Toll Hybrid Claims Against Employers Due to Unions' Purported Misrepresentations**

Metro-North's opening brief cited several cases in which courts have dismissed as untimely hybrid plaintiffs' claims against their employers, while permitting claims to proceed against the unions alleged to have engaged in fraudulent concealment.  Mot. at 8-10 & n.6.  The Opposition only tries to distinguish two of these cases, but its attempt to do so fails.  With respect to *Robinson v. Central Brass Manufacturing Co.*, the Opposition misstates the court's reasoning.  The *Robinson* court determined that even if the hybrid plaintiff's union had misled her about the availability of intra-union remedies, it would not toll the limitations period on her claim against her former employer.  987 F.2d 1235, 1245 (6th Cir. 1993).  The Opposition inaccurately attributes that conclusion to a presumption of union members' knowledge of their collective bargaining agreements.  Opp. at 16 (quoting *Robinson*, 987 F.2d at 1243).  But in fact, the untimeliness of the hybrid plaintiff's claim against her former employer was dictated by the fact that the union's actions could not be imputed to the plaintiff's former employer, and misrepresentations that were not made by the former employer could not be the basis for equitable tolling against the former employer.  *Robinson*, 987 F.2d at 1245.

Likewise, Plaintiff attempts to distinguish the *Robinson* case by claiming that the court identified federal labor policies in favor of tolling hybrid claims while plaintiffs pursue certain internal union grievances that are inapplicable to this case.  Opp. at 17 (quoting *Robinson*, 987 F.2d at 1241).  But the *Robinson* court's discussion of those labor policies was unrelated to its determination that the union's purported misrepresentations could not toll the limitations period

3

on the hybrid plaintiff's claim against her former employer, *Robinson*, 987 F.2d at 1245, which is the relevant analysis for the purposes of this motion.

The Opposition's attempt to distinguish *Hollingsworth v. Ford Motor Co.*, 644 F. App'x 496 (6th Cir. 2016) also is unavailing. The Opposition does not address the portion of the decision relevant to Metro-North's motion – that tolling of a hybrid plaintiff's claim against his former employer is improper when the plaintiff "claims only that [his union], and not [his former employer], concealed information from him; thus, there is no basis for finding that the limitations period is tolled against [the former employer] due to fraudulent concealment." *Id.* at 503 (internal citation omitted). Instead, the Opposition focuses on the fact that, depending on the circumstances of the case, the *Hollingsworth* court would allow the accrual of a hybrid claim to be measured by reference to either the union's or the employer's alleged violations, whichever occurred later. Opp. at 18 (quoting *Hollingsworth*, 644 F. App'x at 500). The Opposition, on the other hand, contends that the timeliness of a hybrid claim should be measured only based on the union's alleged violation of its breach of the duty of fair representation. *Id.* at 10. But this purported distinction is a red herring, because the *Hollingsworth* court ultimately relied on the date of the union's alleged breach to calculate the accrual of the plaintiff's claim. *Hollingsworth*, 644 F. App'x at 504. Because the *Hollingsworth* plaintiff's claim accrued at the same time under the standards articulated by the *Hollingsworth* court and the Opposition, the Opposition's attempt to disregard the decision fails.

In short, the Opposition overlooks the salient analysis in the cases cited by Metro-North holding that the limitations period on a hybrid plaintiff's claims against his employer is not tolled by alleged misrepresentations by the plaintiff's union – reasoning that other courts also have adopted. *See Searcy v. Anderson Erickson Dairy Co.*, No. 16-cv-00475, 2018 WL 1536506, at

4

*7 (S.D. Iowa Feb. 8, 2018) (refusing to toll statute of limitations on a hybrid claim brought only against an employer because "the statute of limitations for a claim may only be tolled because of *the defendant's* actions," and only the plaintiff's non-party union was alleged to have given the plaintiff misinformation) (emphasis in original).

      B.      The Opposition Relies on Inapposite Authority

The Opposition relies heavily on two Second Circuit cases from the 1980s to support Plaintiff's position that he could timely sue Metro-North whenever the alleged misrepresentations by Local 808 purportedly came to light, irrespective of the fact that Metro-North had no knowledge of the supposed misstatements or control over Local 808. Opp. at 11-15. But it is unclear that the employer in either of the cases on which the Opposition relies objected to tolling the limitations period on the claim against it because of a union's alleged fraudulent misrepresentations, as Metro-North does here. In *King v. New York Telephone Company*, the Second Circuit's decision focused on the existence of factual disputes about when the plaintiff knew or should have known that her union did not make a timely arbitration demand, and only discussed the rationale for reversing the award of summary judgment to the employer in a footnote. 785 F.2d 31, 36 n.2 (2d Cir. 1985). Similarly, in *Demchik v. General Motors Corp.*, both the employer and union defendants argued that the plaintiff had actual knowledge of any claimed breach of the duty of fair representation by his union years before filing suit, and the Second Circuit's decision focused on whether tolling can continue after a plaintiff is notified of a final adverse determination on his grievance without separately analyzing the validity of plaintiff's claim against his former employer. 821 F.2d 102, 105-06.

Moreover, the employers in the *King* and *Demchik* cases were not subject to the same degree of delay and surprise that Metro-North has been here, minimizing their need for the

5

protection afforded by statutes of limitations.  In *King*, the plaintiff filed her hybrid complaint in federal court approximately two years and one month after her employment was terminated – far less than the ***four years*** that elapsed between Plaintiff's termination and the filing of the instant suit.  785 F.2d at 33.  Another important distinction is that before the plaintiff in *King* filed suit she proceeded through all four steps of an internal grievance procedure.  *Id*.  This grievance gave her employer much prompter notice of a dispute surrounding the circumstances of the plaintiff's dismissal than Metro-North received when it first learned of Plaintiff's challenge to his termination in his July 2018 Complaint.  Although the employer in *King* may have considered the matter resolved temporarily when the union failed to timely demand arbitration at the end of the internal grievance process, it knew approximately ten months after it denied the plaintiff's grievance about her unresolved objection to her termination when it received her union's arbitration demand (albeit an untimely demand under the applicable collective bargaining agreement).  Only approximately one year and four months elapsed between the employer's denial of the plaintiff's internal grievance and the plaintiff's initiation of her federal hybrid suit.  *Id.*

Similarly, in *Demchik* the plaintiff proceeded through two of the four steps of an internal grievance procedure to appeal the termination of his employment, giving the employer prompt notice of a dispute as to the propriety of the plaintiff's termination.  821 F.2d at 104.  Indeed, the employer was aware that an unresolved dispute existed concerning plaintiff's termination when the union made an incomplete filing to proceed to the third step of the grievance process approximately one year and nine months before the plaintiff's federal hybrid suit was filed.  *Id.*  In total, only approximately two years and nine months elapsed between the date on which the employer contended the plaintiff was terminated and the filing date of plaintiff's hybrid suit.  *Id.*

By contrast, Metro-North's first notice of a dispute concerning Plaintiff's discharge came more than four years after his termination, presenting a textbook example of the surprise and resurrection of dormant claims that statutes of limitations are intended to prevent.

## II. DISMISSING PLAINTIFF'S CLAIM AGAINST METRO-NORTH WOULD NOT PREVENT HIM FROM SEEKING RELIEF AGAINST LOCAL 808

Plaintiff suggests that if his claim against Metro-North is dismissed he will be left "remediless," Opp. at 19-20 (internal quotation marks omitted), by citing inapposite authority about whether an employer can raise an employee's failure to exhaust contractual remedies as a defense, *see Vaca v. Sipes*, 386 U.S. 171, 185-86 (1967).  In fact, Plaintiff can continue to seek the relief demanded in his Complaint – an award of unspecified compensatory and economic loss with interest, costs, and attorneys' fees – from Local 808 even after the dismissal of his claim against Metro-North.  Compl. p. 8.

It is well-settled that an employee who contends that he was injured when his union violated the duty of fair representation it owed to him after an alleged breach of a collective bargaining agreement can pursue a claim against his union alone.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983) (employee claiming his discharge breached a collective bargaining agreement "may, if he chooses, sue [the union] and not [the company] . . .").  Although a plaintiff claiming that his union failed to fairly represent him after his purportedly improper termination must "allege violations on the part of both" his former employer and union, he need not pursue a claim for relief against his former employer.  *See White v. White Rose Food*, 128 F.3d 110, 115-16 (2d Cir. 1997) (dismissal of claim against one hybrid defendant on statute of limitations grounds "has no bearing on the validity of the plaintiffs' suit" against the other hybrid defendant); *Arnold v. 1199 SEIU*, No. 09 Civ. 5576, 2009 WL 4823906, at *3 (S.D.N.Y. Dec. 15, 2009), *aff'd*, 420 F. App'x 48 (2d Cir. 2011)

7

("[A]lthough the [hybrid] plaintiff need not name both the employer and the union as defendants, the plaintiff must prove fault by both in order to succeed against either.") (citing *Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000)). Therefore, the untimeliness of Plaintiff's claim against Metro-North alone does not prevent him from pursuing the money damages that he seeks from Local 808.[3]

## CONCLUSION

For the foregoing reasons and those set forth in its opening brief, Metro-North respectfully requests that the Court dismiss Plaintiff's claim against it with prejudice, and grant Metro-North such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 3, 2018

                                                Respectfully submitted,

                                                RICHARD L. GANS, ESQ.
                                                VICE PRESIDENT & GENERAL COUNSEL
                                                METRO-NORTH COMMUTER RAILROAD
                                                420 Lexington Ave., 11th Floor
                                                New York, New York 10170

                                              By: s/ Jennifer A. Mustes
                                                    Jennifer A. Mustes (JM2816)
                                                    420 Lexington Ave., 11th Floor
                                                    New York, New York 10170
                                                    (212) 340-2504
                                                    jmustes@mnr.org

                                              *Attorneys for defendant Metro-North Commuter Railroad Company*

---

[3] Metro-North expects Plaintiff's claim against Local 808 will fail for other reasons – among them, because Plaintiff's termination was proper under the CBA. *See* Opp. at 6 ("[T]o prevail against *either defendant*, plaintiff must not only show that his *discharge by the employer was contrary to the contract* but must also carry the burden of demonstrating a breach of duty by the Union.") (internal quotation marks and alterations omitted; emphases added).