UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN ANDERSON,

                      Plaintiff,

-against-

METRO-NORTH COMMUTER
RAILROAD COMPANY and
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL 808,

                      Defendants.

**OPINION AND ORDER**

18 Civ. 6152 (ER)

Ramos, D.J.:

      Steve Anderson ("Anderson") brings this action against Defendants Metro-North Commuter Railroad ("Metro-North") and International Brotherhood of Teamsters Local 808 (the "Union," and together with Metro-North, "Defendants"), alleging breach of contract, duty of fair representation, and violations of the Railway Labor Act ("RLA"), 45 USC § 151. Before the Court is Metro-North's motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6). Doc. 17. For the reasons set forth below, Metro-North's motion is DENIED.

## I.    BACKGROUND

### A.  Factual Background

      Plaintiff was employed by Metro-North in May 2006, most recently as a track foreman. Compl. at ¶ 11. Metro-North is a public benefit corporation which provides commuter rail service and is a wholly owned subsidiary of the Metropolitan Transportation Authority ("MTA"). *Id.* at ¶ 7. The Union is the recognized bargaining agent of Plaintiff as defined by the

collective bargaining agreement (hereinafter "CBA") negotiated between the Union and Metro-North pursuant to the RLA. *Id.* at ¶ 10.

Due to a serious health condition, Plaintiff requested intermittent leave under the Family and Medical Leave Act ("FMLA") 29 U.S.C.A. §§ 2601 *et seq*. for a one-year period commencing September 6, 2013 through September 5, 2014. *Id.* at ¶ 12. Metro-North approved the request on December 27, 2013. *Id.* However, by letter dated April 16, 2014, Metro-North informed Plaintiff he was being charged with "unsatisfactory absenteeism" as a result of his absences. *Id.* at ¶ 13. By another letter dated May 19, 2014, Metro-North informed Plaintiff he was being charged once again for his failure to report to duty during the period April 30, 2014 to May 13, 2014. *Id.* at ¶ 14.

Plaintiff submitted to a medical examination by Metro-North's Occupational Health Services ("OHS") on May 20, 2014 to assess his health condition and OHS concluded that Plaintiff was able to return to work. *Id.* at ¶¶ 15–16. While Plaintiff disputed this conclusion, Metro-North informed Plaintiff by letter dated June 4, 2014 that his employment was being terminated pursuant to Rule 28 of the CBA due to his absenteeism. *Id.* at ¶¶ 16–17.

Rule 28 provides that, except for sickness, disability, or circumstances beyond his control, "an employee who is absent in excess of fourteen (14) consecutive days without receiving permission from his supervisor will forfeit all seniority under this Agreement." *Id.* at ¶ 18. Such forfeiture may be appealed under Rule 27, section 3, which states that an "[a]ppeal from discipline must be made, in writing, by the employee or on his behalf by his union representative to the Director-Labor Relations within fifteen (15) days after receipt of written notice of discipline." *Id*. at ¶¶ 18–19. If no timely appeal is filed, the right of appeal is dropped. *Id*. at ¶ 19. Further, "[a]fter the appeal has been acted upon, the employee or his union

representative shall be advised not later than thirty (30) days after the hearing, in writing, of his decision." *Id*. Rule 26 also provides that a claim or grievance denied "will be considered closed unless within nine (9) months from the date of the decision of the Director-Labor Relations proceedings are instituted before the Impartial Arbitrator or such other Board as may be legally substituted therefor under the Railway Labor Act." *Id*. at ¶ 20.

According to Plaintiff, upon receipt of the June 4, 2014 termination letter, he immediately contacted the Union and was advised by the Union Treasurer/ Secretary Chris Silvera ("Silvera") that a timely grievance concerning his discharge was filed. *Id*. at ¶ 21. Silvera later advised Plaintiff that the appeal had been denied and that the Union would request arbitration pursuant to Rule 26 (c) of the RLA. *Id*. at ¶ 22. Thereafter, Plaintiff had numerous conversations, via text and telephone, with Silvera regarding the status of his grievance and on each occasion, Silvera advised him that the Union was awaiting the scheduling of the grievance. *Id*. at ¶¶ 23–24.

On August 17, 2015, Silvera completed a questionnaire that was provided to him by the United States Railroad Retirement Board since Plaintiff claimed benefits under the Railroad Unemployment Insurance Act and Silvera certified that he was "handling [Plaintiff's] case for reinstatement." *Id*. at ¶ 26. In December of 2016 and throughout 2017, Silvera repeatedly assured Plaintiff that the arbitration hearing would be scheduled soon. *Id*. at ¶¶ 28–29. In a text message exchange in February of 2017, Plaintiff asked Silvera, "If you know that I don't stand a chance or that I'm not going to arbitration please tell me a (sic) soon as you can" to which Silvera responded:

> I would have told you if we were not going to arbitrate you (sic) discipline. I sometimes win cases that I think I would lose and lose cases I think I would win. At all times we present the best case we can. It is then up to the arbitrator to decide…. This NMB process is slow. I read that the average wait is ten years. This was in a railroad magazine. We have not experienced that but I have seen 4.5 years. That person won and got full back pay.

3

*Id.* at ¶ 30. In April of 2017, Plaintiff requested to review his file but Silvera postponed the appointment because the union was relocating its offices and the files were inaccessible. *Id*. at ¶ 32. Furthermore, on two occasions in September 2017 and once in October 2017, the Union Vice President Marvin Allen responded to Plaintiff's inquiries and informed him there was no updated information about the arbitration hearing. *Id.* at ¶¶ 33–35.

In March 2018, Plaintiff was informed by the Union secretary that the Union mailed him a certified letter concerning his grievance but it had been returned unclaimed. *Id*. at ¶ 36. The letter, dated January 8, 2018 and signed by Silvera, was emailed to Plaintiff on March 20, 2018 and stated the following:

> We have reviewed your termination.
>
> You were absent without permission from April 26 to May 13, 2014. There was an intervention and you were allowed to take a return to work physical. On May 20, 2014 you were cleared to return to work and never did.
>
> On June 4, 2014 you were notified by the carrier of your dismissal under Rule 28 of the Collective Bargaining Agreement.
>
> We had no information that would allow us to file an appeal to Labor Relations within the required fifteen (15) days.

*Id*.

## II.  LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rules of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

Before commencing suit against an employer for breach of a collective bargaining agreement, an employee is ordinarily required to exhaust any grievance or arbitration remedies provided in that agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53 (1965). When an employee has not exhausted all claims against his employer arising under the CBA, the employee may still resort to federal court by bringing a "hybrid" action against both his employer and the union. *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 702 (S.D.N.Y. 2006). "This is referred to as a 'hybrid' claim because there effectively are two causes of action: One against the employer under the collective bargaining agreement and another against the union for breach of duty of fair representation." *Id*.

These claims are interdependent, since to prevail against either his employer or the union, the employee "must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165 (1988) (citing *United Parcel Service, Inc. v.*

5

*Mitchell*, 451 U.S. 56, 66–67 (1981)). Even if his claims remain unexhausted, the employee is not barred from bringing a hybrid action "as long as he can prove that the union has breached its duty of fair representation in failing to pursue his grievance." *Vera*, 424 F. Supp. 2d at 702.

The duty of fair representation "stands 'as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law.'" *DelCostello*, 462 U.S. at 164 n.14 (citing *Vaca v. Sipes*, 386 U.S. 171, 171 (1967)). A union breaches its duty of fair representation by refusing to pursue a grievance to arbitration "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190; *see also Samuels v. Air Transport Local 504*, 992 F.2d 12, 16 (2d. Cir. 1993).

A hybrid claim against an employer pursuant to the RLA and a union for breach of the duty of fair representation is governed by a six-month statute of limitations. *Cruise v. Doyle*, 2008 U.S. Dist. LEXIS 1286, at *5 (S.D.N.Y. 2008) (citing *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 240 (2d Cir. 1984)). When the cause of action is based on the duty of fair representation, claims against *both the employer and the union* begin to accrue "no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred." *King v. New York Telephone Co.,* 785 F.2d 31, 34 (2d Cir. 1986) (emphasis added) (quoting *Santos v. District Council of New York City*, 619 F.2d 963, 969 (2d Cir. 1980)). Concealment of the breach will toll the statute of limitations until the plaintiff discovers the fraud. *Baskin v. Hawley*, 807 F.2d 1120, 1130 (2d Cir. 1986). However, a plaintiff's "own lack of diligence should not toll the limitations period in [his] favor." *White v. White Rose Food*, 128 F.3d 110, 115 (2d Cir. 1997).

Contrary to Metro-North's assertion, *King v. New York Tel. Co*. is in fact directly on point. 785 F.2d 31 (2d Cir. 1986). In that case, the court concluded there was a material issue of

fact as to whether the plaintiff knew or should have known of the union's failure to take her case to arbitration and therefore revived the plaintiff's hybrid claims. *King*, 785 F.2d at 35. After her termination, the plaintiff had immediately requested her union to institute grievance proceedings on her behalf. *Id*. at 33. Under the applicable CBA, the union was required to demand arbitration within thirty days of receipt of her employer's denial of her grievance filing. *Id.* In a letter received by the union on October 1, 1982, the employer denied the plaintiff's grievance. *Id.* However, on June 28, 1983, the union advised the plaintiff it planned to pursue arbitration and did not inform her of the grievance denial until August 2, 1983, despite the many inquiries made by the plaintiff. *Id.* The court ultimately found there was nothing in the record to indicate that plaintiff knew of the thirty-day period following the denial of her grievance or that the union had done nothing to preserve its right to demand arbitration. *Id.* at 34.

Just as the plaintiff in *King*, Plaintiff in the instant case had no reason to believe he exhausted his remedies under the CBA because the Union, which was serving as his representative in the grievance procedure, advised him that it would take the matter to arbitration. The facts alleged also indicate that Plaintiff reasonably believed the Union was proceeding in good faith up until he learned of the true status of his grievance on March 20, 2018. According to Plaintiff, he checked in with the Union and Silvera several times throughout 2017 to learn the status of the arbitration hearing. Compl. at ¶¶ 22–35. Plaintiff even went so far as to plainly ask if he has a chance at arbitration, to which Silvera replied that Plaintiff would have been told if the Union was not going to arbitrate his case. *Id*. at ¶ 30.

Another strikingly similar case from this Circuit is *Demchik v. General Motors Corp*. 821 F.2d 102 (2d Cir. 1987). In that case, the plaintiff was on a pre-approved medical leave of absence commencing in November 1981. *Id.* at 103. During this leave of absence, the plaintiff's

7

physician, without the plaintiff's knowledge, informed his employer that he would return to work on December 21, 1981. *Id.* When the plaintiff did not return to work, his employment was terminated on January 4, 1982 due to the unjustified absences. *Id.* In June 1982, the plaintiff filed a grievance with his union, claiming his employer violated the CBA. *Id.* However, the plaintiff's grievance automatically closed when the union failed to file a notice of appeal as the third step of the four-step grievance procedure. *Id.* at 104. The union continued to engage in several conversations and meetings with the plaintiff thereafter which led him to believe that his grievance was still being processed. *Id.* In September 1983, the union informed the plaintiff that his grievance had been withdrawn but did not tell him that it failed to file the notice. *Id.* The plaintiff received a copy of the Union's Statement of Unadjusted Grievance in July 1984 and filed suit in October 1984. *Id.*

Despite the union's claim that the plaintiff knew his grievance was not being pursued as of September 1983, the court held that "the date the statute of limitations begins to accrue is not necessarily the date that the employee is notified of a final adverse determination with respect to a grievance," but when the employee has "actual or constructive" notice of the breach. *Id.* at 105. The court stated it is plausible the plaintiff did not challenge the outcome of the grievance because he deferred to the union's expertise and good faith efforts. *Id.* at 105–106. Ultimately, the court found the statute of limitations had been tolled until November 1985, when the plaintiff learned of the union's failure during a deposition. *Id.* at 106.

In the instant action, Metro-North asserts Plaintiff would have been aware of the Union's fraud on June 20, 2014 when the fifteen-day appeal deadline had passed. Doc. 18 at 11. However, as in *Demchik*, Plaintiff presumably deferred to the Union's expertise. For example, in February 2017, Silvera told Plaintiff, "This [] process is slow. I read that the average wait is ten

8

years. This was in a railroad magazine. We have not experienced that but I have seen 4.5 years. That person won and got full back pay." Compl. at ¶ 36. Plaintiff continued to engage in similar conversations with the Union up until he received the outcome of the grievance.

Despite Metro-North's claim, the statute of limitations is not determined based on the plaintiff's "minimal level of diligence" in discovering the fraud. "An employee's knowledge of the limitations period in a collective bargaining agreement is a question of fact." *King*, 785 F.2d at 34 (citing *Schum v. South Buffalo Railway*, 496 F.2d 328, 331 (2d Cir. 1974)). Employees typically do not have "the expertise, knowledge or experience to interpret the complicated substantive and procedural provisions of a collective bargaining agreement." *Schum*, 496 F.2d at n.4. There is nothing in the record to indicate Plaintiff knew or should have known of the Union's fraudulent representations regarding the status of the arbitration. Plaintiff did not receive constructive notice that his case had been mishandled until after receipt of the Union's email on March 20, 2018. He filed his complaint four months later on July 6, 2018, well within the six month period provided for in the CBA.

## IV.  CONCLUSION

For the reasons set forth above, Metro-North's motion is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 17.

It is SO ORDERED.

Dated:  April 24, 2019
        New York, New York

_____
Edgardo Ramos, U.S.D.J.

9